**No. 69206.**—Beasley French Co., Inc., et al. *v.* United States, protests 58/21503, etc. (New York).

FORD, Judge: The cases listed above, consolidated for trial, are brought for the purpose of determining the proper classification of certain envelope-making machines and parts thereof, which were classified under the provisions of para- graph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as articles having as an essential feature an electrical element or device. By virtue of this classification, duty was assessed thereon at the rate of 13¾ per centum ad valorem.

It is the contention of plaintiffs herein that said merchandise is properly dutiable at various rates, depending upon the date of entry, under the provisions of paragraph 372 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, as other machines and parts, not specially pro- vided for. It is alternatively claimed that the 1-horsepower electric motors for the fans are subject to classification as electric motors of more than 1/10 horse- power but not less than 200 horsepower, under the provisions of paragraph 353 of the Tariff Act of 1930, as modified by said sixth protocol, *supra*, and, as such, dutiable at 11½ or 10½ per centum ad valorem, depending upon the date of entry.

The pertinent portions of the statutes involved herein provide as follows: Paragraph 353 of the Tariff Act of 1930, as modified by T.D. 52739, *supra:*

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

Other (except * * *) _____ 13¾% ad val.
Parts, finished or unfinished, wholly or in chief value of metal, not specially provided for, of articles provided for in any item 353 of this Part (not including X-ray tubes or parts thereof) \_\_\_ The same rate of duty as the articles of which they are parts.

Paragraph 372 of the Tariff Act of 1930, as modified by T.D. 54108, *supra:*

Machines, finished or unfinished, not specially provided for :

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

Other (except * * *) _____ 13% ad val., 12% ad val., or 11½% ad val.

Parts, not specially provided for, wholly or in chief value of metal or porcelain of any article provided for in any item 372 in this Part_____ The rate for the article of which they are parts.

Paragraph 353 of the Tariff Act of 1930, as modified by T.D. 54108, *supra:*

Motors :

Of more than 1/10 horsepower but less than 200 horsepower\_\_\_ 11½% ad val., 11% ad val., or 10½% ad val.

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

The record herein consists of the testimony of one witness, called on behalf of plaintiffs, and a pamphlet depicting the imported machines, received in evidence as plaintiffs' exhibit 1, as well as the four envelopes produced by said machines, received in evidence as plaintiffs' collective illustrative exhibits 2–A, 2–B, 2–C, and 2–D. The operation of the machine was described by the witness as follows :

It takes a roll of paper, unwinds it and with side cutters, rotary cutters, cuts out a part of the edges, folds the paper over, and prints gum on both sides and seals it and makes a packet, what we call powder-proof packet or an envelope type of bag.

The interpretation of the provision of paragraph 353 of the Tariff Act of 1930, involved herein, has been the subject of incessant litigation since it first appeared in the Tariff Act of 1930. The basic rule for determination of this principle was set forth in the case of *United States* v. *Dryden Rubber Co.*, 22 CCPA 51, T.D. 47050, as follows :

There are two inquiries, therefore, when the question of the classifiability of an article under this division of the paragraph is under consideration : First, is it essentially an electrical article? The electrical feature must be an essential feature, without which the article will not function, normally, for the purposes intended, for, it must be manifest, that if it be not an electrical article, it does not come within the division at all. Second, if it is such an electrical article, is it an article named in the language, or within the class of articles named in this paragraph?

From what has been said, it follows that if the article, when it is imported, is designed and constructed to use electrical power, or other power, interchangeably, then it has not, as an essential feature, an electrical element or device.

On the other hand, if, when the article is imported, it is so constructed as to utilize electrical power solely, and, therefore, is essentially, an electrical article, and its various parts are imported, are intended to be used, and are used, together, as was the case with the imported merchandise, then no reason can be seen why it should not be considered, for dutiable purposes, within the scope of the third division of this paragraph, for in such case, we think the article should be held to be included within the class of articles named in the paragraph.

This well-established principle is still considered by the courts as a means for determining whether an article falls within the portion of paragraph 353 involved

herein.  See *United States* v. *Mill & Mine Supply Co.*, 30 CCPA 128, C.A.D. 224; *United States* v. *Baker Perkins, Inc., et al.*, 46 CCPA 128, C.A.D. 714.

The basic consideration is not whether the article under protest has as an essential feature an electrical element or device but whether the function of the completed article falls within the purview of paragraph 353.  In the instant case, plaintiffs have abandoned their claim with respect to the drying beam unit covered by protest 58/22699.  It is further established that said drying beam unit is essential to the operation of the machine, since the gum must be dried or it will stick to the rollers of the machine.  The imported beam dryers are equipped with electric drying elements, and the record is barren of any evidence as to what would be necessary to utilize any other source of power, in lieu of electricity, such as steam or gas, which it was indicated could be used  in lieu of electricity.  This is a fatal defect, since if it requires a major revision of the existing machinery, it cannot be considered to be removed from the provisions of paragraph 353.  *United States* v. *Dryden Rubber Co., supra; Kerr, Maurer Company* v. *United States*, 48 Cust. Ct. 205, C.D. 2336.

In addition thereto, the evidence establishes that fans with electric motors are used to blow away or suck away scraps caused by the cutting operation.  The witness indicated the fans are not essential to the operation of the machine and that, in fact, some customers do not use them.  There is, however, no further evidence of what would be used in place of the fans or what is done with the scraps cut when such fans are not used.  According to plaintiffs' exhibit 1, gum flap envelopes can be produced by the machine in question at the rate of 500 per minute.  It would seem that after an 8-hour day, there would be considerable accumulation of scrap at or about the machine if there were not some method of removing the scrap during the operation of said machine.  As stated, *supra*, no further evidence was adduced as to how this matter of the scrap was coped with other than the statement of the witness that some customers do not use the fans.  This is far from sufficient to overcome the presumption of correctness attaching to the classification of the collector.

It is to be noted that fans are one of the exemplars set forth in the portion of paragraph 353, *supra*, involved herein.  The fans, of course, must be electric fans, as pointed out in *United States* v. *Dryden Rubber Co., supra.*  The record does establish the fans herein to be electric.  In fact, electric motors for fans are alternatively claimed to be subject to classification as motors under said paragraph 353, *supra.*  The record, however, does not establish satisfactorily what modification is necessary to change the form of power to be used by the fan which would remove it from the provisions of paragraph 353, *supra.*  The record on this subject is, accordingly, also insufficient to overcome the presumption of correctness attaching to the classification of the collector.

In view of the foregoing and following the cases cited, *supra*, the protests are overruled.

Judgment will be entered accordingly.